Kennon, J.
Chapman, the plaintiff in error, brought an action of replevin against Weimer and Steinbacher, before a justice of the peace, for some goods of the value of about $90, and had a judgment in his favor. The case was appealed by the defendants to the court of common pleas, and then submitted to the court upon the facts, and judgment again rendered in favor of Chapman.
The defendants took the case, by petition in error, to the district court of Summit county, and the judgment of the common pleas was reversed and a new trial ordered. The present proceeding is a petition in error, filed in this court, for the purpose of reversing the judgment of the district court.
Upon the trial of the case in the common pleas, the court found in favor of Chapman, and a motion was made for a new trial which was overruled by that court, and judgment rendered. A bill of exceptions was tendered to the court and signed by the judge, from which it appears “ that Ira M. Trussell, being owner of a stock of groceries in 1852, sold them to Z. H. Marvin, for *$674.73; that of this sum, $500 was paid in cash to Trussell, and for the residue, of $174.73, Marvin gave his note, with Chapman as surety, payable in one year, with interest; that the cash payment was-made with money borrowed by Marvin from Chapman, the petitioner, and for which Marvin gave his note to Chapman, payable on demand; that on the 2d of October, 1852, Marvin (who was the stepson of Chapman) executed a chattle mortgage, or bill of sale, of his then stock of goods, with its future increase and additions, to' secure the payment of the $500 note, and to indemnify Chapman against his liability as surety on the note to Trussell.”
There was a clause in this mortgage authorizing Chapman to take-possession of the stock of goods and all he might thereafter have, whenever Chapman might see proper, and to sell and dispose of the same. This mortgage was duly filed the 5th of October, 1852.
On Friday, the 17th of October, 1852, Weimer and Steinbacher sold the property in controversy to Marvin, on credit, and delivered it *485 to him the same day. The goods thus sold were of the value of ■about $90, and were by Marvin taken into his grocery.
On Saturday, the 18th of December, 1852, Chapman went into Marvin’s grocery and demanded of him payment of the $500 note to him. Marvin declared his inability to pay. Chapman then said to him that the business had not been going to suit him, and he would have to take charge of it himself. To which Marvin replied, “Very well, go ahead,” and turned round and left the grocery, and ■did not return until the next day. Chapman remained in the grocery, and, on the 19th commenced taking an invoice of the goods, Marvin being present and aiding in taking the invoice, which was not finished until Monday, December 20,1852. The particular goods in question were invoiced on the 19th of December. It does not appear that' Chapman had any knowledge of the purchase of the gooods from Weimer and Steinbacher, *until they were reached in taking the invoice on the 19th, the day after Chapman had taken possession.
On the 20th, and, as we understand the facts of the case, before •the invoice was fully completed, Marvin told Weimer and Steinbacher they might take the goods, and went before a justice of the peace and confessed judgment for the amount due, then being about $90, and they caused the goods to be levied on by a constable to satisfy their judgment; and Chapman afterward replevied these goods.
It was claimed before the court of common pleas by the defendants in error, that a new trial ought to be granted, upon the ground that the bill of sale, or chattel mortgage, gave to Chapman no lien on the goods, the title to which was acquired by Chapman after the execution of the mortgage; and that such mortgages are void, at least as against creditors and purchasers, so far as the subsequently acquired property is concerned.
This mortgage not only undertakes to convey to Chapman the goods then on hand, but all the goods that Marvin might thereafter acquire; and it authorizes Chapman at any time thereafter, when he might see proper to do so, to take possession of not only the goods then owned by Marvin, but those which he might subsequently own.
It may be safely said that Chapman did not, by the mere execution of this mortgage, acquire any legal title to, or lien on, such subsequently acquired property. But when, after the execution of *486 the mortgage, and after the mortgagor had acquired title to property not owned by him, nor in his power to deliver, at the time of the execution of the mortgage, he does acquire the title and possession of such property, and actually delivers the same to the mortgagee, a very different question arises.
In the case of Moody v. Wright, 13 Met. 17, Justice Dewey, in treating this subject, says: “ A stipulation that future acquired property shall be holden as security for some present engagement, is an executory agreement of such a character that the creditor *with whom it is made may, under it, take the property into-his possession, when it comes into existence, and is the subject of transfer by bis debtor, and hold it for bis security; and whenever be does so take it into bis possession, before any attachment has been made of tbe same, or any alienation, such creditor, under bis executory agreement, may bold the samo; but until such an act be done by bim, be has no title to tbe same; and that such act being done, and tbe possession thus acquired (tbe executory agreement of tbe debtor authorizing it), it will then become bolden by virtue of a valid lien or pledge. Tbe executory agreement of tbe owner in such case is a continuing agreement, so that when the creditor does take possession under it, be acts lawfully, under tbe agreement of one having tbe disposing power; and this makes tbe lien good. If, however, before taking possession, or doing such acts as are necessary to give vitality to tbe mortgage, or to subsequently acquired projDerty, an attachment or assignment takes place, tbe opportunity for completing tbe lien is lost.”
Tbe judge delivering this opinion is speaking of a duly recorded mortgage of personal property, and clearly expresses tbe opinion that the mortgagee may himself take possession of the newly acquired property, and thereby acquire a valid lien under his mortgage, without having the property actually delivered to him by the mortgagor. It is not necessary in tbe case under consideration to carry tbe doctrine to that extent, for we think that tbe court of common pleas was well warranted, from the evidence in this case, in finding, that the property in controversy was actually delivered to the mortgagee by the mortgagor, and that he bad entire possession and control of tbe property before tbe invoice was completed or tbe levy-made. It is not like tbe case of a sale of property, where tbe amount and value has to be ascertained before tbe sale is complete,, .but is an agreement, a continuing executory agreement, to deliver tbe *487, 488 whole; and although tho mortgagor had a right to be present, for the purpose of making, or seeing made, tho inventory of the goods, yet, when *the mortgagee demanded the goods in thcgroccry, and the mortgagor, in pursuance of tho stipulation in tho agreement, said to him, “Very well, go ahead,” and left the grocery, he in substance said take possession, and it amounted to an actual delivery, as the mortgagee did then take possession.
We are aware that Marvin states, in his deposition, that he considered he had still a right to give the goods to the defendants; but this was nothing more than the expression of an opinion, in which, we think, he mistook his rights.
It is claimed, however, that Chapman obtained the possession of these goods by force from Marvin, and that he knew that Marvin had hut lately acquired title to them and had not paid the defendants. This may he all true, hut there is very little if any evidence tending to establish any such facts, and we can not say, therefore, that the court of common pleas erred in not granting a new trial for such reasons.
Upon the whole, therefore, we think the common pleas did not err in refusing to grant a new trial, and that the district court did err in reversing the judgment of the common pleas.
The judgment of the district court is therefore reversed, with costs, and the judgment of the common pleas affirmed.